### *CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY CO. v. ALVIN IVINS.

QUESTION OF NEGLIGENCE PROPERLY SUBMITTED TO JURY.

Where, at a railroad crossing, a freight train stood on a siding, obstructing a view of the main line for about seven hundred feet, the engine with steam up and making considerable noise, apparently about ready to start, and where train men stood at the crossing and saw plaintiff approaching, driving at a slow trot, but made no warning signs, the question whether the plaintiff in thus approaching, without stopping to look or listen, within fifteen feet of the crossing, and until too late to avoid collision with a passenger train on the main line, which ran from behind the freight train and confessedly at a negligent rate of speed, was guilty of negligence, was properly submitted to the jury.

HEARD ON ERROR.

*J. E. Smith, John T. Dye* and *Goulder & Holding*, for plaintiff in error.

*Seth W. Brown, W. L. Dechant* and *P. H. Rue*, for defendant in error.

SWING, J. (Orally.)

With the case of the Big Four railroad against Alvin Ivins, the members of this bar are very familiar. Before this court there have been no less than three presentations of the case; once before Judge Smith and myself; once before Judge Smith, Judge Cox and myself, and lastly before Judge Cherrington, Judge Smith and myself. Judge Smith and I have had a great deal of difficulty in considering this case. We have gone over it repeatedly to see if we could harmonize our views and have discussed the evidence and the law, but while both of us have recognized that it is a case not without a great deal of trouble, we have been unable to agree as to the rights of the parties in the case. Upon the hearing of the case before Judge Cherrington, Judge Cherrington took the view of the case that I had previously entertained, and I will attempt in a very brief way to state what I consider to be the views of the majority of the court on the question.

The question of negligence, as is well known, is a mixed question of law and fact, which, under proper instructions, is to be left to the jury. Whether or not it is negligence seems to be determined by what under like circumstances would men of ordinary prudence have done. Our courts have singled out and repeated in decisions a great many things which amount to negligence *per se*, and they have laid down certain rules which must govern every one, and which they think men of ordinary prudence will observe, and yet, in every case there comes the crucial test to know what men of ordinary prudence would do under the circumstances. For instance, it is said a man must use his senses of seeing and hearing when about to cross a railroad track, because men of ordinary prudence will do that.

---

*Affirmed by the Supreme Court, without report, 55 Ohio St. 674 [48 N. E. Rep. 17.]

And I might state other circumstances; but coming to the que-tion here at issue, Mr. Ivins, I believe, on June 18, 1891, approached the crossing of this railroad track from Franklin, going towards his home. The testimony shows that at a point some ninety feet beyond the crossing of the railroad track, there was opportunity for him to have seen a small portion of the railroad track at one particular place in the road; I think just as he was crossing the canal bridge, the testimony shows a person might see at one point a small portion of the railroad track. I believe the testimony fails to show anything in regard to the conduct of Mr. Ivins at that particular place. He crossed the canal bridge and also went beyond, following the road crossing to the track until he passed the Maxwell warehouse. At that point he was forty-two feet from the railroad track.

The testimony of those who saw Mr. Ivins at that time was that immediately after passing the Maxwell warehouse, he turned his face north in the direction of the railway track. At that time, if he saw anything, he saw a freight train standing upon the side track, extending from two hundred and forty feet at a limit some seven hundred feet north on the track. This freight train was attached to an engine, or consisted of an engine and quite a long train of cars. The freight train was standing still, blowing off steam, making a great deal of noise.

I believe the testimony fails to show whether, in his position at that time, he was able to see the train over the top of the freight cars, approaching from the north. He was proceeding in his wagon, which had in it empty milk cans, down towards the crossing of the railway track, I may say the testimony authorizes the court to believe and authorized the jury to believe, at a slow jog of a trot. He proceeded within fifteen feet of the track. The testimony of the witnesses would seem to indicate that is about the distance, from twelve to fifteen feet, when, I think the testimony fairly shows, he saw the passenger train shooting out from behind the freight train, on the main track. He saw the approaching passenger train, I assume, at about the same time the engineer of that train saw him. At that time, both the engineer and Ivins, the testimony shows, attempted and tried to do all they could to avoid a collision. The engineer sounded the danger signals and put on air brakes. Ivins tried his best to avoid a collision, but a collision resulted in which Ivins was very seriously injured.

It is admitted that the railroad company was running at a negligent rate of speed. The engineer says at the time of the collision, he was running at about the rate of ten miles an hour. I believe the testimony shows that before the train was stopped, it had gone about two train lengths. The testimony of other witnesses was that it was running as high as thirty-five miles an hour. The train was seven minutes behind time. The testimony tends to show that Ivins knew that a train was due at Franklin about that time, at or near that time. It does not show conclusively whether he had supposed the train had passed, or had not passed, as far as I remember.

These facts, under proper instructions, were left to the jury to determine whether or not, admitting the railway company to have been negligent, Ivins was guilty of contributory negligence. The jury have said that he was not guilty of contributory negligence. Now, can we, as a reviewing court, say that manifestly and fairly against the evidence, Ivins was guilty of contributory negligence? For my part, I can not. It

is difficult for me to see in what particular Ivins was negligent. What should he have done to have avoided the collision, or what would a man of ordinary prudence under like circumstances have done? What could have been the condition of his mind? What would the mind of an ordinary prudent person be liable to do under like circumstances?

It is said that one should stop and listen, and yet that is not always the case where circumstances are such as to lead one, a reasonable man, to think that the way is clear for him to proceed.

It would seem to me that in order for Ivins to have avoided this collision at that time, it might have been necessary, as it turned out, that he should have stopped his horse, to have got out, possibly, and gone and inquired of the railroad men, as the testimony seems to show that they were standing there. They did not signal to him to stop. He saw them standing there, if he saw anything, if he was looking at them. They made no effort to stop him or warn him out of any danger. He saw the engine under steam evidently about to draw out. He approached the railway crossing on a slow jog of a trot, which ordinarily he might have supposed was sufficient for him to check his horse, if there was danger. So, that I cannot see that there was any danger apparent or any negligence on the part of Ivins, unless it be that he got to within fifteen feet of that track on a slow jog trot, because, after that time, the evidence shows, he did all within his power to do to prevent the collision.

Now, might he not have assumed that this engine with the freight train attached was about to pull out, and seeing those people standing there, the railroad people, on the track, making no effort to stop him, that he should go across the road. He did not approach the track in what you might call a reckless manner, because it is not negligence under all circumstances to approach a train on a slow jog of a trot.

But further than that, had he not the right to assume that this train, if there were a train approaching, would blow its whistle; that it would sound its alarm; that it would ring the bells? And further, that if it were approaching the crossing, that it was approaching it at a proper rate of speed, to-wit, six miles an hour, instead of coming at a lighting rate of speed of thirty or thirty-five miles an hour, and without sounding an alarm or any signal of danger to him?

Now, while I say there are decisions and statements in decisions which might lead one to think that possibly he ought to have got out, if he did not know positively that the way was clear, and hitched his horse and stopped and hallooed, or something of that kind, it may strike different minds differently.

Now, I had some doubt about it, but Judge Cherrington in talking about it said he thought it was fairly equitable, and that if he had been a juror, he should have felt he was in duty bound to render a verdict for the plaintiff under the circumstances, much less would he feel like reversing it, sitting as judge in a reviewing court; so that to the majority of the court, it is not manifestly clear that this man was guilty of such contributory negligence that he cannot recover in the action.

We have looked to the question of excessive damages, which was not argued to us. We see that it is alleged that it is a ground of error in the petition. We have looked over that. We think if the jury believed statements of Ivins, as they had a right to do, and the statements of Dr. Mitchell, the expert witness, that the judgment is not excessive, and it should be confirmed for the full amount.